IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

REGINA LOPEZ,

      Plaintiff,

v.                                              CIV. NO. 13-240 GBW

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

      Defendant.

## ORDER GRANTING PLAINTIFF'S MOTION TO REVERSE OR REMAND

      This matter comes before the Court on Plaintiff's Motion and Memorandum to Reverse or Remand the Social Security Agency (SSA) Commissioner's decision to deny Plaintiff disability insurance benefits. *Docs. 22, 23.* For the reasons discussed below, the Court GRANTS Plaintiff's motion and REMANDS this action to the Commissioner for further proceedings consistent with this opinion.

I.    **BACKGROUND**

      A.  **Plaintiff's Medical History**

      Plaintiff is a 42-year-old woman with a history of chronic pain, headaches, and psychological ailments. Specifically, she alleges disability due to a history of West Nile Virus and meningitis, persistent back and neck pain, vertigo, chronic fatigue syndrome, headaches, visual problems, trouble sleeping, depression, anxiety, and posttraumatic

1

stress disorder (PTSD).  *Doc. 23* at 2, 17-18.  Plaintiff also suffers from fibromyalgia and asthma.  AR at 14.

Plaintiff was diagnosed with viral meningitis in August 1995, after being admitted to the emergency room on several occasions for back pain, neck pain, and persistent headaches.  AR at 438-47.  The following year, Plaintiff saw Dr. Charles W. Evans, M.D., for lumbar back pain, which was believed to be a possible result of her meningitis.  AR at 456-459.  She was treated with trigger point injections in the spine. AR at 458-459.  Dr. Evans also suggested physical therapy and ultrasound massage for the pain.  AR at 459-60.  Plaintiff reported experiencing depression and anxiety during this period, and Dr. Evans proposed that she seek psychiatric counseling.  AR at 461.

In 2003, Plaintiff again experienced persistent headaches, back pain, and neck pain, as well as visual disturbances.  She underwent a test for West Nile virus in August 2003 that returned equivocal results.  AR at 569-70.  Plaintiff saw Dr. Paul Walsky, M.D., in October 2003.  AR at 467.  He noted that Plaintiff had experienced symptoms indicating West Nile virus, but that medical tests did not confirm this diagnosis.  AR at 467.  At this time, Plaintiff reported headaches about four days a week.  AR at 467.  Dr. Walsky's impression was post-aseptic meningitis, headache, and visual disturbance. AR at 468.

In February 2005, Plaintiff was treated by Dr. Derrick Lee, M.D., for back pain and dizziness, and he recommended that Plaintiff see a neurologist regarding her

history of West Nile virus.  AR at 504, 506.  Dr. Lee noted that plaintiff experienced fatigue that was "probably chronic fatigue . . . post West Nile."  AR at 504.  Plaintiff consulted Dr. Pawan Jain, M.D., a neurology consultant, in May 2005, for "chronic fatigue and vertigo . . . following viral meningitis."  AR at 502.  She reported continued headaches, neck pain, and back pain.  AR at 502.  Dr. Jain diagnosed Plaintiff with post infection positional vertigo and chronic neck and back pain.  AR at 502.  With regard to her level of functioning, he reported that "[s]he had difficulty doing her daily activities" and that, "[d]ue to the nature of her above illness . . ., she would not be able to do gainful employment for any kind of jobs."  AR at 502.  Plaintiff returned to Dr. Lee in April 2007, who noted that an MRI "showed minimal protrusion of her lumbar spine, which really didn't correlate to her pain," and stated that he did not have any evidence of Plaintiff having West Nile.  AR at 248-49.  Dr. Lee prescribed medications for Plaintiff's asthma and back pain, and Effexor for her depression.  AR at 249.

Plaintiff began seeing Dr. Jill Rhymes, M.D., her primary care physician, in 2008. AR at 326.  Dr. Rhymes treated Plaintiff for fibromyalgia, which Plaintiff reported she had been diagnosed with four years earlier.  AR at 326.  Dr. Rhymes noted that Plaintiff suffered from frequent headaches and depression, and she prescribed Plaintiff an antidepressant.  AR at 327-28.  Plaintiff consulted neurologist Dr. William J. Wengs, M.D., in late July 2008, after being referred by Dr. Renny H. Levy, M.D., of Eye Associates of New Mexico.  AR at 288, 302-303.  Dr. Wengs prescribed Gabapentin for

headache and nerve-related pain, but stated that he found "no clear etiology . . . for her symptoms other then [*sic*] the suspected West Nile encephalitis that could well be an etiology that would have left her with neuronal irritation in the central nervous system."  AR at 303.

In August 2008, Plaintiff was referred by Disability Determination Services (DDS) for two consultative examinations.  On August 13, she saw licensed psychologist Dr. John Lang, PhD, who concluded that she had neurological symptoms, chronic pain, and was depressed, agitated, and anxious.  AR at 305-7.  On August 20, Plaintiff saw Dr. Martin Trujillo, M.D., for an additional consultative examination.  His impression was that Plaintiff suffered from depression and anxiety, chronic fatigue syndrome, possible post-viral meningitis syndrome, and had a history of headaches.  AR at 324.  He also reported a "[h]istory of chronic low back pain with evidence of degenerative joint disease and probable degenerative disc disease."  AR at 324.  Dr. Trujillo explained that West Nile virus could cause symptoms of pain long after the illness had resolved, but that "[u]nfortunately, these syndromes have no specific objective evidence to confirm the diagnosis . . . ."  AR at 324.  He generally believed Plaintiff's reported medical history, and found that she was a "nonmalingerer."  AR at 324.  In September 2008, Dr. Scott Walker, M.D., a state agency psychiatrist, opined that Plaintiff suffered from anxiety, depression, and cannabis abuse.  AR at 332-344.  However, he concluded that there was insufficient evidence to determine her functional limitations.  AR at 342-44.

Plaintiff continued to be treated for fibromyalgia by Dr. Rhymes in 2010.  AR at 376.  In April 2010, Plaintiff saw Dr. David Woog, M.D., at Santa Fe Pain and Spine Specialists for multifactorial, multisite pain.  AR at 401.  Dr. Woog assessed that Plaintiff had suspected lumbar and cervical spondylosis, fibromyalgia, and chronic neuropathic pain related to West Nile virus.  AR at 404.  Plaintiff rated her pain at 6 on a 10-point scale.  AR at 401.  She also explained that prolonged standing, walking, and weight bearing caused her intense back pain.  AR at 401.  Dr. Woog treated Plaintiff with lumbar facet joint injections.  AR at 494-95.  Also in April 2010, Plaintiff saw Dr. Michael Gzaskow, M.D., for a psychiatric consultative examination.  AR at 380.  He found that Plaintiff had a depressed mood, but concluded that her insight and judgment were good.  AR at 383.  His diagnostic impressions included depressive disorder, general anxiety disorder, post West Nile virus syndrome, degenerative joint disease with lower back pain, asthma, fibromyalgia, and chronic spinal pain and migraines.  AR at 384.

In June 2010, Dr. Janice Kando, M.D., performed a physical residual functional capacity (RFC) assessment on Plaintiff.  AR at 412-19.  Based on Plaintiff's spondylosis, fibromyalgia, and other symptoms, she opined that Plaintiff could occasionally lift up to 20 pounds, and that Plaintiff could stand, walk, or sit for about 6 hours in an 8-hour workday.  AR at 413.

In July 2010, Dr. Renate Wewerka, M.D., performed an RFC assessment to determine Plaintiff's psychological limitations.  AR at 420-22.  She found that Plaintiff's

mental conditions did not significantly limit her functioning capacity.  AR at 420-21.
She concluded that Plaintiff could carry out detailed but not complex instructions,
could interact with coworkers, and would benefit from a work environment with well-
defined expectations.  AR at 422.

In October 2010, Dr. Rhymes noted that Plaintiff's fibromyalgia had worsened
following the injections she received from Dr. Woog, and she referred Plaintiff to Dr.
Schwartz.  AR at 523-34.  In January 2011, Plaintiff saw Dr. Belyn Schwartz, M.D., who
found that Plaintiff had chronic multifactorial pain following viral meningitis, anxiety,
depression, and posttraumatic stress disorder.  AR at 513.  Dr. Schwartz saw Plaintiff
every three months following this visit, and, in July 2011, completed a medical source
statement for Plaintiff in which she diagnosed Plaintiff with depression, anxiety, and
PTSD.  AR at 543.  She determined that Plaintiff could not sit, stand, or walk for more
than 2 hours in an 8-hour workday.  AR at 543.  She found that, among other
restrictions, Plaintiff could only occasionally lift 10 pounds, was likely to be "off task"
25% or more of a typical workday due to the severity of her symptoms, and would
probably be absent from work more than four days a month.  AR at 544-45.

Plaintiff also consulted Dr. Oksana Lyubarsky, M.D., in 2011, who treated
Plaintiff for depression, anxiety, and PTSD.  AR at 517-18.  In July 2011, Dr. Lyubarsky
completed a medical opinion regarding Plaintiff's mental ability to do work-related
activities.  AR at 550-51.  Dr. Lyubarsky concluded that, in all categories but one,

Plaintiff was unable to meet competitive standards or had no useful ability to function. AR at 550-51.

**B.  Procedural History**

Plaintiff filed her Title II and XVI applications for disability insurance benefits and supplemental security income on June 18, 2008, alleging disability beginning on April 10, 2008.  AR at 12.  Her claims were denied on February 13, 2009, and, after Plaintiff's request for reconsideration, were again denied on July 9, 2010.  AR at 12.

On July 30, 2010, Plaintiff requested a hearing before an Administrative Law Judge (ALJ), and a hearing was held via video conference before ALJ Ann Farris on July 14, 2011.  AR at 12.  The ALJ issued her decision on September 15, 2011, denying Plaintiff's request for benefits.  AR at 9-27.  In making this decision, the ALJ applied the required five-step sequential analysis.  AR at 13-14.

At step one, the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since April 10, 2008, the onset date of her disability.  AR at 14.  Next, at step two, she found that Plaintiff had the following severe impairments: dysthymic disorder, a pain disorder, post-viral meningitis syndrome, and cervical and lumbar spondylosis.  AR at 14.  At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment.  AR at 15.  The ALJ next determined that Plaintiff had a residual functional capacity (RFC) to perform light work with the following limitations: "she can

only occasionally climb, balance, and stoop; should do no kneeling, crouching or crawling.  In addition, she should avoid pulmonary irritants and hazards.  However, she has adequate concentration for simple and some detailed tasks; with occasional public contact, but no crowds."  AR at 16.  The ALJ concluded that, in light of her RFC, Plaintiff was unable to perform her past relevant work.  AR at 19-20.  However, at step five, the ALJ relied on the testimony of vocational expert Pamela Ann Bowman to determine that Plaintiff's RFC permitted her to perform other work that exists in significant numbers in the national economy.  AR at 20-21.  Specifically, Plaintiff could work as an assembler or a mail clerk.  AR at 20-21.  Because Plaintiff had the RFC to perform other work, the ALJ concluded that she was not disabled.  AR at 21.

Plaintiff appealed to the Appeals Counsel on November 18, 2011, and her appeal was denied on January 24, 2013.  AR at 1-7, 8.  Plaintiff filed her complaint in the instant matter on March 13, 2013.  *Doc. 1.*

## II.   APPLICABLE LAW

### A.  Standard of Review

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the Commissioner only to determine whether it (1) is supported by "substantial evidence," and (2) comports with the proper legal standards.  *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 800-01 (10th Cir. 1991).  "In reviewing the ALJ's decision, 'we neither

reweigh the evidence nor substitute our judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Casias*, 933 F.3d at 800. "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). "[I]n addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id*. at 1010. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

### B.  Disability Determination Process

For purposes of Social Security disability insurance benefits, an individual is disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To determine whether a person satisfies these criteria, the SSA has developed a five-step test.  *See* 20 C.F.R. § 404.1520.

If the Commissioner is able to determine whether an individual is disabled at one step,

he does not go on to the next step. *Id*. § 404.1520(a)(4). The steps are as follows:

(1) Claimant must establish that he is not currently engaged in "substantial gainful activity." If claimant is so engaged, he is not disabled.
(2) Claimant must establish that he has "a severe medically determinable physical or mental impairment . . . or combination of impairments" that have lasted for at least one year. If claimant is not so impaired, he is not disabled.
(3) Claimant must establish that his impairment(s) are equivalent to a listed impairment that has already been determined to be so severe as to preclude substantial gainful activity. If listed, the impairment(s) are presumed disabling.
(4) If the claimant's impairment(s) are not listed, claimant must establish that the impairment(s) prevent him from doing his "past relevant work." If claimant is capable of returning to his past relevant work, he is not disabled.
(5) If claimant establishes that the impairment(s) prevent him from doing his past relevant work, the burden shifts to the Commissioner to show that claimant is able to "make an adjustment to other work." If the Commissioner is unable to make that showing, claimant is deemed disabled.

*See* 20 C.F.R. § 1520(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).

Step four of this analysis consists of three phases. *Winfrey v. Chater*, 92 F.3d 1017,

1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional

capacity in light of "all of the relevant medical and other evidence." 20 C.F.R. §

404.1545(a)(3). A claimant's RFC is "the most [he] can still do despite [his physical and

mental] limitations." *Id*. § 404.1545(a)(1). Second, the ALJ determines the physical and

mental demands of claimant's past work. "To make the necessary findings, the ALJ

must obtain adequate 'factual information about those work demands which have a

bearing on the medically established limitations.'" *Winfrey*, 92 F.3d at 1024 (quoting

Social Security Ruling 82-62 (1982)). Third, the ALJ determines whether, in light of his

RFC, the claimant is capable of meeting those demands.  *Id*. at 1023, 1025.

**III.**   <u>ANALYSIS</u>

Plaintiff does not challenge the ALJ's determination at step one of the sequential analysis.  She does, however, dispute the ALJ's determination at steps two through five for the following reasons: (1) the ALJ failed to address Plaintiff's PTSD and anxiety, (2) the ALJ failed to attribute any symptoms or functional effects to post-viral meningitis syndrome, (3) the ALJ erred in evaluating the treating physicians' opinions, (4) the ALJ's reliance on the state physicians' and psychologist's opinions was not supported by substantial evidence and was legally erroneous, and (5) the ALJ's credibility finding was not supported by substantial evidence and was legally erroneous.  *See generally doc. 23.*  Finally, Plaintiff claims that the Appeals Council erred by not considering the additional evidence from Dr. Russell.  *Doc. 23 at 24.*  The Court, having carefully reviewed the record and applicable law, finds that the ALJ erred in evaluating Plaintiff's treating physicians' opinions, and therefore grants Plaintiff's request for remand.

**A.   <u>Any error from the ALJ's failure to address PTSD or anxiety at step two was harmless</u>**

Plaintiff alleges that the ALJ failed to address her PTSD or anxiety at any step of the sequential analysis.  The Commissioner concedes that the ALJ did not explicitly consider these conditions in step two, but argues that this error was harmless because the ALJ continued to evaluate Plaintiff's disability at steps three through five.  *Doc. 25 at*

5-6.  Because step two is intended only to "weed out" cases in which a claimant could

not be found disabled, and the ALJ did not screen out the case at step two, Defendant

argues that it is immaterial whether the ALJ considered Plaintiff's PTSD and anxiety at

that step.  *Doc. 25* at 6 (citing *Bowen v. Yuckert*, 482 U.S. 137, 156 (1987)).

    At the second step of an ALJ's analysis, the ALJ must determine whether the

claimant has established that she has a medically severe "impairment or combination of

impairments."  20 C.F.R. § 404.1520(c).  Even if an ALJ errs at step two of the evaluation

process, the error will be rendered harmless if the ALJ proceeds to consider steps three

through five.  *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("Nevertheless,

any error here became harmless when the ALJ . . . proceeded to the next step of the

evaluation sequence."); *Dray v. Astrue*, 353 F. App'x 147, 149 (10th Cir. 2009) (holding

that an ALJ only need find one severe impairment at step two, and explaining that "step

two is designed to weed out . . . those individuals who cannot possibly meet the

statutory definition of disability") (internal quotations omitted); *Burk v. Astrue*, 493 F.

App'x 913, 916 (10th Cir. 2012) (finding no reversible error where the ALJ found at least

one severe impairment at step two of the analysis and proceeded to step three).  Here,

despite reaching a decision adverse to Plaintiff at step two, the ALJ proceeded to

discuss the remaining steps of the evaluation process.  Thus, even if the ALJ erred at

step two, the error was rendered harmless and the Court therefore need not consider

Plaintiff's objections to step two any further.

**B.  The ALJ properly considered Plaintiff's PTSD and anxiety at step three**

In her Motion to Remand, Plaintiff argues that the ALJ failed to consider her PTSD or anxiety at step three of the sequential analysis because the ALJ did not specifically name these disorders at that point in her order.[1]  Defendant maintains that the ALJ did consider Plaintiff's PTSD and anxiety because she explicitly addressed disability listing 12.04 for affective disorders as well as 12.06 for anxiety related disorders.  20 C.F.R. pt. 404, subpt. P, app. 1 § 12.04, 12.06.  The Commissioner further urges the Court to take the ALJ at her word that she considered all of Plaintiff's impairments.

At step three of the evaluation process, the ALJ must determine whether the claimant's impairments or combination of impairments are so severe that they meet or medically equal an impairment listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P.  If a claimant has an impairment or combination of impairments that is equivalent to any of the impairments on this list, then the claimant is presumed disabled.  20 C.F.R. § 404.1520(a)(4)(iii).  If the claimant does not meet or exceed the requirements for a listed

---

[1] Plaintiff also challenges the ALJ's determination at step three for failing to consider the symptoms of post-viral meningitis syndrome.  *Doc. 23* at 19.  However, Plaintiff does not provide any support for this error at step three, nor does she argue that her impairment meets any specific listing.  *See Drummond v. Astrue*, 895 F. Supp. 2d 1117, 1126-27 (D. Kan. 2012) ("Plaintiff . . . does not argue that his condition meets or medically equals *any* listing . . . .  The burden of proof at step three is on Plaintiff, and to be found disabled at that step, he must demonstrate that his impairments meet all of the criteria of a particular listing . . . .  He has not done so.").  Moreover, in her reply, Plaintiff seems to abandon any step three argument and only alleges that ALJ committed an error at step four by not considering the symptoms of post-viral meningitis.  As such, the Court finds that Plaintiff has failed to show any error in the ALJ's decision at step three with respect to this point.

13

impairment, the ALJ will move on to step four of the sequential analysis.

Plaintiff points out that the ALJ did not refer to PTSD or anxiety in her step three analysis, and cites *Salazar v. Barhart* for the proposition that "the failure to consider all of [Plaintiff's] impairments is reversible error." 468 F.3d 615, 621 (10th Cir. 2006).  In *Salazar*, the Court found that the ALJ erred by failing to consider borderline personality disorder at all in Plaintiff's disability determination.  *Id.* at 621.  Even though the ALJ stated that he had considered "all the evidence of record," the Court found this assertion "untenable" because the ALJ never considered or mentioned the listing for personality disorders at step three.  *Id.* at 22.

Plaintiff's case is markedly different from the circumstances in *Salazar*.   It is true that, as in *Salazar*, the ALJ affirmed that she made her findings "[a]fter careful consideration of the entire record." AR at 14; *Wall v. Astrue*, 561 F.3d 1048, 1070.  However, in this case the ALJ clearly considered Plaintiff's psychological ailments when she compared Plaintiff's impairments against listings 12.04 for affective disorders and 12.06 for anxiety related disorders, both of which deal with psychological impairments, including anxiety and trauma.  AR at 15-16.  Plaintiff's situation is thus much more akin to the circumstances in *Wall v. Astrue*, the case cited by Defendant, in which the court determined it should abide by the "well-established principle" of taking an ALJ at his word that he contemplated all of the evidence, where his reasoning and conclusions otherwise so indicate.  *Wall*, 561 at 1070.  It is thus appropriate in this case to trust that

14

the ALJ did, in fact, consider all of the evidence.

The Court also notes that the ALJ's analysis at step three does not specifically reference *any* of Plaintiff's impairments, but rather focuses on the severity of her symptoms and her functional limitations. *See* AR at 15-16. The failure to refer to anxiety or PTSD by name does not, on its own, indicate that the ALJ did not consider these impairments. For the foregoing reasons, the Court finds that the ALJ properly considered anxiety and PTSD at step three of the sequential analysis, and did not err.

## C. **The ALJ properly considered Plaintiff's PTSD, anxiety, and post-viral meningitis syndrome in calculating her RFC**

Plaintiff alleges that the ALJ erred in determining her RFC at step four by failing to consider her PTSD and anxiety. The Commissioner, on the other hand, points to the ALJ's assessment that Plaintiff should have only "occasional public contact, but no crowds" as evidence that she considered these disorders. AR at 16. Plaintiff also argues that the ALJ failed to identify any symptoms or limitations resulting from Plaintiff's post-viral meningitis when calculating the RFC, despite the fact that the ALJ found this to be a serious condition at step two.

The claimant's RFC is determined at step four, phase one of the sequential analysis. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). The ALJ is required to "assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b). The claimant bears the responsibility of

15

providing medical evidence of a mental impairment.  20 C.F.R. §§ 404.1514 and

404.1508; *Howell v. Sullivan*, 950 F.2d 343, 348 (7th Cir. 1991).  The ALJ has an obligation

to develop a full and fair record.  *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir. 1991).

The focus in making an RFC determination at step four is not on the impairments

themselves, but on the "functional limitations and restrictions" that result from the

impairments.  *Jimison ex rel. Sims v. Colvin*, 513 F. App'x 789, 793 (10th Cir. 2013).  For

example, the court found no error in *Jimison* where the claimant failed to point to any

functional limitations that were improperly omitted by the ALJ.

     Here, it seems that the ALJ did consider, to a certain extent, Plaintiff's functional

limitations arising from her PTSD, anxiety, and post-viral meningitis.  First, she

specifically limits Plaintiff to work involving only "occasional public contact, but no

crowds"—an apparent reference to her mental impairments.  AR at 16.  Further, she

discusses Plaintiff's nerve-related pain and headaches, symptoms which result from her

post-viral meningitis.  AR at 17.  Most significantly, the ALJ asserts that she considered

"all symptoms" in making her RFC determination.  As explained above, the Court

should take the ALJ at her word where her decision otherwise indicates that she

considered all of the evidence.  AR at 16; *Wall*, 561 at 1070.

     In addition, Plaintiff, like the claimant in *Jimison*, fails to show how her PTSD,

anxiety, or post-viral meningitis limited her functioning beyond the ALJ's calculated

RFC.  Because Plaintiff retains the burden at step four, *see, e.g., Washington v. Shalala*, 37

F.3d 1437, 1442 (10th Cir. 1994), the Court concludes that Plaintiff has failed to show

that the ALJ erred by failing to consider all of Plaintiff's impairments when performing

her RFC analysis.

> **D.** **The ALJ erred in evaluating Plaintiff's treating physicians' opinions when determining her RFC**

Plaintiff argues that the ALJ erred in evaluating the opinions of Plaintiff's

treating physicians, Dr. Schwartz and Dr. Lyubarsky, when she gave them lesser weight

than the opinions of other physicians on the record.  AR at 19.

An ALJ is required to give controlling weight to a treating physician's well-

supported opinion if it is not inconsistent with other substantial evidence in the record.

20 C.F.R. § 404.1527(c)(2). When evaluating the weight to be given to a treating

physician's opinion, the ALJ must complete a two-step inquiry.  First, she considers

"whether the opinion is well supported by medically acceptable clinical and laboratory

diagnostic techniques and is consistent with the other substantial evidence in the

record." *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007).  If the opinion meets

both criteria, the ALJ must give the opinion controlling weight. *Id.*  If the treating

physician's opinion is not entitled to controlling weight, the ALJ must proceed to the

second step of the inquiry and determine the amount of weight to be given to the

opinion.  "Treating source medical opinions are still entitled to deference and must be

weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927." *Watkins v.*

*Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting Social Security Ruling (SSR) 96-

2p, 1996 WL 374188, at *4 (July 2, 1996)).  These factors are: "(1) the length of the

treatment relationship and the frequency of examination; (2) the nature and extent of

the treatment relationship, including the treatment provided and the kind of

examination or testing performed; (3) the degree to which the physician's opinion is

supported by relevant evidence; (4) consistency between the opinion and the record as a

whole; (5) whether or not the physician is a specialist in the area upon which an opinion

is rendered; and (6) other factors brought to the ALJ's attention which tend to support

or contradict the opinion."  *Id.* at 1301.

At the first step of the inquiry, ALJ found that the opinions of Dr. Schwartz and

Dr. Lyubarsky were not entitled to controlling weight because they were "not fully

supported by treatment records and progress notes and are inconsistent with the

opinions of the other physicians in the record."  AR at 19.  However, the ALJ completely

failed to complete the second step of the inquiry.  She simply states "I give greater

weight to the opinions of the other physicians in the record, as they are more consistent

with the objective signs and finding[s]."  AR at 19.  This analysis is insufficient.  While

an ALJ is not required to perform a step-by-step evaluation of each of the six factors, she

must provide good reasons for the weight assigned to a treating physician's opinion,

and explain her reasoning in a manner "sufficiently specific to make clear to any

subsequent reviewers the weight the adjudicator gave to the treating source's medical

opinion and the reasons for that weight."  *Watkins,* 350 F.3d at 1300 (internal quotations

omitted).  The ALJ's one conclusory sentence does not adequately or specifically explain the weight she has chosen to give these opinions, and the Court therefore finds that the ALJ erred for failing to apply the correct legal standard.  As such, Plaintiff is entitled to remand for a proper evaluation of the weight given to her treating physicians' opinions.

IV.   C<small>ONCLUSION</small>

Plaintiff has not demonstrated that the ALJ erred at steps two or three of the sequential analysis, or that she failed to consider Plaintiff's PTSD, anxiety, or post-viral meningitis in calculating Plaintiff's RFC.  However, the ALJ did err at step four of the sequential analysis by improperly evaluating the weight to be given to the opinions of Plaintiff's treating physicians, Dr. Schwartz and Dr. Lyubarsky.

Therefore, Plaintiff's Motion to Reverse or Remand is GRANTED, and this action is remanded to the Commissioner for further proceedings consistent with this opinion.

IT IS SO ORDERED.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by consent**